UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

William J. Stephens, Jeffrey Breyer, Steven
Pratt, Steven Stembel, Rosemary Rice and
Larry Flacks, individually and on behalf of
all other similarly situated employees,

        Plaintiffs,

v.

CASE NO. 07-15368
HONORABLE DENISE PAGE HOOD

BERGIN FINANCIAL, INC., D/B/A PERFECT
MORTGAGE, INC., a Michigan Corporation,
MATTHEW BERGIN and JOSEPH BERGIN,

        Defendants.
_____/

**<u>ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION TO DISMISS OPT-IN PLAINTIFFS, DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT JOSEPH BERGIN'S MOTION FOR SUMMARY JUDGMENT, AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**I.    INTRODUCTION**

This matter is before the Court on the following motions: (1) Plaintiffs' Unopposed Motion to Dismiss Opt-In Plaintiffs[1] [Docket No. 47, filed on December 12, 2008]; (2) Plaintiffs' Motion for Partial Summary Judgment on Liability [Docket No. 50, filed on December 19, 2008]; (3) Defendant Joseph Bergin's Motion for Summary Judgment Based on His Lack of "Employer" Status Under the Fair Labor Standards Act [Docket No. 51, filed on

---

[1] The Court grants the Plaintiffs' Motion to Dismiss Opt-In Plainitffs Kevin Carhart, David Hoffman, Robert Weinheimer, Phil Alsing, Carolyn Evans, Christoper Bitzer, Gregory Wardford, Frederick Newing, and Thomas Wendell Williams, Jr. as these individuals were not loan officers within the statutory period, and the motion is unopposed.

December 19, 2008]; and (4) Defendants' Motion for Partial Summary Judgment on the Issues of Good Faith and Willfulness [Docket No. 52, filed on December 19, 2008].

## II. BACKGROUND

This action involves former employees of a mortgage broker who allege that their employer refused to pay them wages that they were due, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); and the corresponding Michigan and Illinois statutes, Mich. Comp. Law § 408.381 *et seq.*, and 820 Ill. Comp. Stat. §105/1, *et seq.*, respectively. Plaintiffs William Stephens, Jeffrey Breyer, Steven Pratt, Steven Stembel, Rosemary Rice, and Larry Flacks, along with eighteen "opt-in" Plaintiffs (collectively referred to as "Plaintiffs"), are all former employees of Defendant Bergin Financial, Inc. ("BFI"), doing business as Perfect Mortgage, Inc. ("Perfect Mortgage"). The Plaintiffs were all loan officers who were employed in either BFI's Southfield, Michigan, or Schaumburg, Illinois branch offices. Perfect Mortgage was an outgrowth of a smaller mortgage broker, Midwest Mortgage Group ("Midwest"), created by Defendant Joseph Bergin and his wife Nicola Bergin in May of 1995. Shortly after its creation, Defendant Matthew Bergin, the brother of Joseph Bergin, joined Midwest. Although he was initially a loan officer, he was also responsible for the daily operations of the company. By January of 2002, Midwest became a mortgage lender and took the name Bergin Financial, with a business name of Perfect Mortgage. As Perfect Mortgage expanded into Michigan and Illinois, Joseph Bergin began developing plans for a title company. In January of 2006, Joseph Bergin opened and became President of Bergin Title Company, which subsequently changed its name to Promise Title.

Matthew Bergin serves as President and Chief Operating Officer of Perfect Mortgage.

In these roles, he is responsible for significant aspects of daily operations. The roles played by Joseph Bergin are the subject of much dispute. According to his declaration, Joseph Bergin holds no corporate office within Perfect Mortgage, and since 2002 has focused on marketing and business plans for BFI, which includes Perfect Mortgage. However, Plaintiffs indicate, relying on both the Defendants' website and employee Handbook, that Joseph Bergin functions as both the CEO and as a leader of the company's senior management team. While the roles of Joseph and Matthew Bergin will be further examined below, it is undisputed that Nicola Bergin is now the full owner of Perfect Mortgage and has no involvement in the day-to-day operations of the company.

As loan officers at Perfect Mortgage, the Plaintiffs' primary responsibility was to sell loans. The conditions under which the Plaintiffs fulfilled this responsibility is a subject of further dispute. According to Defendants, the loan officers are hired with the expectation that they will continue to extend their own networks for referrals and sales. Defendants maintain that Perfect Mortgage provided training materials to loan officers regarding self-generating leads and outside referrals in order to assist them in developing their own books of business. Loan officers were hired and fired by managers, who were also responsible for scheduling matters and disciplining the staff that they supervised. Defendants submit that the loan officers were provided with general attendance policies, but were not disciplined for failing to adhere to the attendance policies.

In contrast, Plaintiffs indicate that, while their hours were not closely monitored, managers paid close attention to loan officers' absences and arrivals at the office, and that loan officers and managers were required to report and record any deviations from a preset schedule. Plaintiffs contend that the vast majority of their time working was spent selling loans inside of

Defendants' branch office location. Specifically, Plaintiffs estimate that 90-100% of their working hours were spent making telemarketing calls to potential borrowers, or leads. These leads were more often than not a result of Defendants' corporate advertising campaign; however, Plaintiffs were also encouraged to make a concerted effort to make outbound calls in order to meet a minimum sales quota. If a potential borrower qualified for a loan product, the loan officer would complete a standard loan application, which required them to identify the manner in which the application was made (i.e, in person, over the telephone, through the mail, or over the Internet). Loan officers were also responsible for remaining in contact with the potential borrower and gathering any additional documentation necessary for the underwriting process. The Plaintiffs were compensated on a pure commission, based upon the number of loans they sold that were actually approved and funded. This payment classification forms the basis of Plaintiffs' claim that Defendants' pure commission compensation structure, as applied to the loan officers, violated the FLSA.

At the heart of this dispute is the Defendants' classification of Plaintiffs as "outside salespersons" who are exempt from the wage and hour requirements of the FLSA. Plaintiffs argue that Defendants are not entitled to the affirmative defense of the outside sales exemption, and that Perfect Mortgage's President and Chief Operating Officer Matthew Bergin, and founder Joseph Bergin, should be held individually liable for any FLSA violations. Conversely, Defendants claim that they are entitled to the "good faith" and "willfulness" defenses under the FLSA, and Defendant Joseph Bergin cannot be considered an "employer" for purposes of the FLSA and thus should not be subject to personal liability.

## III.     STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.*

## IV.    ANALYSIS

The Court will address each of the following issues in turn: (1) whether Plaintiffs fall under the "outside sales" exemption from the FLSA; (2) whether Defendants Matthew Bergin and Joseph Bergin are "employers" for purposes of the FLSA; (3) whether Defendants acted in good faith when classifying its loan officers as exempt; and (4) assuming Defendants violated the FLSA, whether they did so willfully.

### A. Outside Sales Exemption

The FLSA prevents employers from requiring their employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay. *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009) (citing 29 U.S.C. § 207(a)(1)). "The FLSA contains certain exemptions from the overtime compensation requirement, 29 U.S.C. § 213; however, '[e]xemptions under the FLSA are narrowly construed against the employer.'" *Id.* (citing *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir. 2001)). Exemptions under the FLSA are treated as affirmative defenses that an employer must establish by a preponderance of the evidence. *See Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007).

Defendants maintain that Plaintiffs are exempt from the FLSA's overtime and minimum wage provisions under the "outside sales" exemption. 29 U.S.C. § 213(a)(1). In their motion for partial summary judgment, Plaintiffs argue that Defendants are unable to meet their burden to qualify for eligibility under this exception. Under the FLSA regulations, an employee's position must satisfy two criteria in order to qualify for the "outside sales" exemption: (1) the employees primary duty is "making sales" or "obtaining orders or contracts for services for which a consideration will be paid by the client or customer"; and (2) the employee must be "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). There is no dispute Defendants have met the first prong. On the second prong, the Court finds that there is a genuine issue of material fact concerning whether Defendants qualify for the outside sales exemption, and therefore Plaintiffs' motion for partial summary judgment is denied.

The regulations governing outside sales employees provide additional guidance

concerning the meaning of the second criteria, namely, what it means to be "customarily and regularly engaged away" from the employer's place of business. "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701. "In simple terms, in order to qualify for the outside salesman exemption, an employee must spend a significant amount of his or her work-time engaging in sales related activities away from his or her employer's place of business." *Olivo v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 550 (E. D. Mich. 2004).

Here, the parties dispute how much time Plaintiffs actually spend working in the office. Plaintiffs maintain that they spent the vast majority of their working hours in the employer's place of business, estimating that 90 to 100 percent of their working hours were spent working in Defendants' offices. In direct contrast, Defendants contend that Plaintiffs were expected to be outside of the office, developing and extending their own networks and leads, and note that some officers did not even have an office to which they were to report. Defendants also maintain that several loan officers spent a "substantial amount of time working leads from out of the office." Aff. of Matthew Bergin, Def.'s Mem. of Law in Resp. to Pl.'s Mot. for Partial Summ. J., Ex. B.

The question of how an employee spends his time is a question of fact. *See Fields v. AOL Time Warner, Inc.*, 261 F.Supp.2d 971, 974 (W.D. Tenn. 2003). Here, the facts in dispute are the very facts on which the inquiry of whether Plaintiffs are outside salespersons turns. When viewed in the light most favorable to the non-moving party, there is a genuine issue of material fact regarding whether each individual Plaintiff falls under the FLSA's "outside sales" exception, and Plaintiffs' motion for partial summary judgment on this issue is denied.

The Court notes that, in their reply brief, Plaintiffs move to strike the declarations of the following individuals previously not identified by Defendants: Rudy Patros, Michael Sparks, Greg Montgomery, and Bill Whiting. However, the Court need not rely on these declarations to determine that there is a genuine issue of material fact as to whether Plaintiffs are outside salespersons. Accordingly, Plaintiffs' Motion to Strike is moot. If Defendants intend to present these individuals at trial, Plaintiffs and Defendants must reach an agreement regarding the addition of witnesses, and allowing for further depositions as necessary. If the parties are unable to resolve this issue on their own, they may then proceed with motions before the Court.

**B.     "Employer" Status**

Under the FLSA, the definition of employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Whether a party is an employer under the FLSA is a question of law, and "[t]he Supreme Court has held that the term is to be construed *expansively* to fulfill the remedial goals of the Act." *Finke v. Kirtland Comm. College Bd. of Trustees, et al.*, 359 F.Supp.2d 593, 598 (E.D. Mich. 2005) (emphasis added). When determining whether a party is an employer, courts are to apply a test of "economic reality," which "is determined based upon all of the circumstances," and "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Saunders v. Ace Mortgage Funding, Inc.*, 2007 WL 4165294 (D. Minn. 2007). In applying this test, "'[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.'" *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991), *quoting Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983).

While no single factor is determinative, some economic factors that have been determined to be relevant include, but are not limited to, "the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and the role in causing the corporation to compensate or not compensate employees in compliance with the FLSA." *Saunders*, 2007 WL 4165294 at *4. "'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Dole*, 942 F.2d at 965, *quoting Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). Significantly, "[t]o be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions." *Id.* at 966. Defendants Matthew Bergin and Joseph Bergin must be evaluated individually for purposes of determining liability under the FLSA.

### 1. Matthew Bergin

Both parties agree that Matthew Bergin is the President and Chief Operating Officer of Perfect Mortgage. In this role, Matthew Bergin has responsibility for significant aspects of the company's daily operations. According to Defendant BFI, Matthew Bergin controls the financial affairs of Perfect Mortgage and controls the compensation structure, with input from Joseph Bergin. By Defendants' own admission, Defendant Matthew Bergin owned 30% of the shares of Perfect Mortgage until early in 2006, meaning he had a significant ownership interest in the company for at least part of the relevant time period. However, "[o]wnership is not an element that must be satisfied but rather a factor to be weighed in the totality of the circumstances." *Finke,* 359 F.Supp.2d at 598. A corporate officer without an ownership interest may still be an employer under the FLSA.

9

Although there were aspects of day-to-day operations that Matthew Bergin was not responsible for, such as the hiring and firing of individual employees, "[t]he economic realities of this case indicate that [he] was an employer within the meaning of the FLSA . . . . [He] was the chief corporate officer, had a significant ownership interest in the corporation, and had control over significant aspects of the corporation's day-to-day functions . . . ." *Dole*, 942 F.2d at 966. Accordingly, Plaintiff's Motion for Partial Summary Judgment on Liability is granted with respect to Matthew Bergin's employer status.

### 2. Joseph Bergin

The role of Joseph Bergin at Perfect Mortgage is less clear than that of Matthew Bergin. While Defendants maintain that Joseph Bergin has limited ties to Perfect Mortgage and holds no corporate office, Plaintiffs assert that he is the Chief Executive Officer and closely involved in day-to-day business operations. Plaintiffs point to specific documents to demonstrate Joseph Bergin's involvement, such as a change of employment status form and authorizations of employee advances, however the Defendants disagree with Plaintiffs' interpretation of the documents. While "'[t]he determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law,'" in Joseph Bergin's case, the factual setting is the very subject of dispute. *Id.* at 965. Because there is a genuine issue of material fact, Defendant Joseph Bergin's Motion for Summary Judgment Based Upon Lack of Employer Status is denied. On the same grounds, Plaintiffs' Motion for Partial Summary Judgment is denied with respect to Joseph Bergin's employer status.

### C. Good Faith

Under the FLSA, an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case

may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). There is a limited defense to this provision, which "requires 'proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002), *quoting McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971). "The defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it," a burden which is "a difficult one to meet." *Dalheim v. KDFW-TV*, 712 F.Supp. 533, 536. (N.D. Texas 1989). "The employer has an affirmative duty to ascertain and meet the FLSA's requirements, and an employer who negligently misclassifies an employee as exempt is not acting in good faith." *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004). Even if the employer demonstrates good faith and reasonableness, a court still has discretion to award liquidated damages. *Id*.

Defendants contend that they consulted with counsel to insure compliance with state and federal law, and asked about compensation policies and the exempt status of loan officers. According to Defendants, they were advised that, if daily hours were not mandated and loan officers solicited and generated business on their own at least 51% of the time, they could be classified as outside salespersons. However, Plaintiffs submit that Defendants never made any effort to track or record whether the loan officers were working inside or outside of the office to demonstrate that they fell short of a standard of good faith. Assuming, *arguendo*, that Plaintiffs were misclassified, and construing all facts in the light most favorable to the Plaintiffs, Plaintiffs have presented sufficient evidence to support their claim that Defendants acted negligently in

11

misclassifying Plaintiffs, and this issue remains for the trier of fact. Defendants' motion for summary judgment on good faith is denied.

### D. Willfulness

Generally, violations of the FLSA are governed by a two-year statute of limitations, although the statute of limitations is extended to three years if a violation of the FLSA is determined to have been "willful." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988). The Supreme Court has distinguished willful violations from mere negligence, stating that a violation of the FLSA is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . ." *Id*. at 133. The burden for establishing that a defendant has willfully violated the FLSA rests with the plaintiff. *See Wyland v. District of Columbia Gov't.*, 728 F.Supp. 35, 36 (D.D.C. 1990)

Assuming for the purposes of this motion that Plaintiffs were misclassified as exempt, Plaintiffs have offered no evidence that Defendants actually knew that Plaintiffs were not exempt. Similarly, Plaintiffs have not produced sufficient evidence to support a finding of a reckless violation. Even if Plaintiffs can demonstrate that any misclassification was unreasonable, this is not enough to support a finding of willfulness. *Id.* at 35. ("[A] finding of unreasonableness does not alone support a finding of willfulness.") As discussed above, when viewed in the light most favorable to the non-moving party, Defendants' failure to investigate further into the classification of its employees may establish negligence, but not willfulness. Accordingly, the Court finds that summary judgment on willfulness is granted in favor of Defendants.

## V. CONCLUSION

Accordingly, for the reasons set forth above,

IT IS ORDERED that Plaintiffs' Unopposed Motion to Dismiss Opt-In Plaintiffs Kevin Carheart, David Hoffman, Robert Weinheimer, Phil Alsing, Carolyn Evans, Christopher Bitzer, Gregory Wardford, Frederick Newing, and Thomas Wendell Williams, Jr. [Docket No. 47, filed on December 12, 2008] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment on Liability [Docket No. 50, filed on December 19, 2008] is DENIED IN PART (regarding whether Plaintiffs are outside salespersons and Joseph Bergin's status as an "employer") and GRANTED IN PART (with respect to Matthew Bergin's status as an "employer"), and Plaintiffs' Motion to Strike [Docket No. 59, filed on January 30, 2009] is MOOT.

IT IS FURTHER ORDERED that Defendant Joseph Bergin's Motion for Summary Judgment Based on His Lack of "Employer" Status Under the Fair Labor Standards Act [Docket No. 51, filed on December 19, 2008] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on the Issues of Good Faith and Willfulness [Docket No. 52, filed on December 19, 2008] is DENIED IN PART (as to good faith) and GRANTED IN PART (as to willfulness).

IT IS FURTHER ORDERED that a status conference is set for November 30, 2009, at 2:30 p.m.

    S/Denise Page Hood
    Denise Page Hood
    United States District Judge

Dated: September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

    S/William F. Lewis
    Case Manager